1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                       EASTERN DISTRICT OF CALIFORNIA

10

11    JUAN CARLOS MARTINEZ,              **Case No.  1:14-cv-00405-AWI-JLT (PC)**

12                 Plaintiff,            **ORDER REQUIRING PLAINTIFF TO
                                         EITHER FILE SECOND AMENDED**
13          v.                           **COMPLAINT OR NOTIFY COURT OF
                                         WILLINGNESS TO PROCEED ONLY ON**
14    BEARD, et al.,                     **CLAIMS FOUND TO BE COGNIZABLE**

15                 Defendants.           **(Docs. 24, 25)**

16                                       **RESPONSE DUE WITHIN 21 DAYS**

17          Juan Carlos Martinez seeks to challenge the actions of prison officials pursuant to 42

18    U.S.C. § 1983.  Now before the Court is Plaintiff's first amended complaint which must be

19    screened to determine whether he has pleaded a cognizable claim.  (Doc. 24.)

20    **I.     Screening Requirement**

21          The Court is required to screen complaints brought by prisoners seeking relief against a

22    governmental entity or officer or employee of a governmental entity.[1]  28 U.S.C. § 1915A(a).

23    The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

24    legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek

25    monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2);

26    28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

27    _____

28    [1] Defendants also requested that the first amended complaint be screened despite Plaintiff's representation by counsel. (*See* Doc. 25.)  This request is granted via issuance of this order.

                                              1

1    II.    **Summary of the First Amended Complaint**

2            Plaintiff complains of acts that occurred from 2012 through 2013 while he was an inmate

3    at Wasco State Prison ("WSP").  Plaintiff names CDCR Secretary Jeffrey A. Beard, WSP Warden

4    John N. Katavich, NFD Butler, Registered Nurses Deborah Bardford, P. Fernando, and R.

5    Sagusta, Jesse A., LVN, Michael Songer, M.D., Ashraf Youssef, M.D., CMO Brian Marshall,

6    Robert Tharrat, M.D., Receiver J. Clark Kelso, and Does 3-10 as Defendants in this action.

7            Plaintiff identifies three claims that he is attempting to pursue in this action -- deliberate

8    indifference to his serious medical needs under the Eighth Amendment, Supervisory Liability,

9    and Negligence.  (*See* Doc. 24, at pp. 38-45.)  Plaintiff's claims are based on a sequence of events

10   that he alleges caused him injury due to lack of timely medical care for an infection that turned

11   into a "massive abscess" on the posterior aspect of his left upper extremity, near his shoulder

12   blade.  Plaintiff seeks various forms of monetary damages.

13           Plaintiff has stated some cognizable claims and may be able to cure deficiencies in his

14   other claims such that he is being given the option to either proceed on the claims found

15   cognizable herein, or **one last opportunity** to file an amended complaint.

16   III.   **Pleading Requirements**

17          **A.  Federal Rule of Civil Procedure 8(a)**

18          "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

19   exceptions," none of which applies to section 1983 actions.  *Swierkiewicz v. Sorema N. A.*, 534

20   U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  A complaint must contain "a short and plain

21   statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. Pro. 8(a).

22   "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and

23   the grounds upon which it rests."  *Swierkiewicz*, 534 U.S. at 512.  However, "the liberal pleading

24   standard . . . applies only to a plaintiff's factual allegations."  *Neitze v. Williams*, 490 U.S. 319,

25   330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply essential

26   elements of the claim that were not initially pled."  *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d

27   1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

28   "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

                                                         2

1  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

2  claim upon which relief may be granted."  28 U.S.C.  § 1915(e)(2)(B)(ii).

3        Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

4  cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556

5  U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

6  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is

7  plausible on its face.'"  *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Factual

8  allegations are accepted as true, but legal conclusions are not.  *Iqbal.* at 678; *see also Moss v. U.S.*

9  *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.  While

10  "plaintiffs [now] face a higher burden of pleadings facts . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949,

11  977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded

12  the benefit of any doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, courts are

13  not required to indulge unwarranted inferences.  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677,

14  681 (9th Cir. 2009) (internal quotation marks and citation omitted).  The "sheer possibility that a

15  defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a

16  defendant's liability" fall short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678, 129

17  S. Ct. at 1949; *Moss*, 572 F.3d at 969.

18        In the prior screening order, the Court noted that the complaint complied with Rule 8(a).

19  However, the first amended complaint has ballooned to forty-six pages in length, only

20  approximately ten of which contain his factual allegations (*see* pp. 27-37) and seven of which

21  identify his causes of action against specified Defendants (*see* pp. 38-45).  While the additional

22  background regarding the appointment of Mr. Kelso as the Receiver, Wasco SP's medical

23  procedures, and the Valley Fever infection is interesting, it is unnecessary at the pleading stage

24  and should not be included if Plaintiff decides to file a second amended complaint.  As previously

25  directed, if he chooses to amend, Plaintiff should endeavor to be as concise as possible.  He

26  should merely state which of his constitutional rights he feels were violated by each Defendant

27  and the factual basis.

28  ///

3

### B.  Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation of
> any rights, privileges, or immunities secured by the Constitution . . .
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff names but fails to link Secretary Beard, Warden Katavich, Deborah Bardford, R.N., Michael Songer, M.D., Ashraf Youssef, M.D., CMO Brian Marshall, Robert Tharrat, M.D., and Receiver J. Clark Kelso to any of his specific factual allegations.  Plaintiff must clearly identify which Defendant(s) he feels are responsible for each violation of his constitutional rights and the alleged factual basis for his claims as his pleading must put each Defendant on notice of Plaintiff's claims against him or her.  *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

## IV.    Claims for Relief

### A.  Plaintiff's Factual Allegations

Plaintiff alleges that in 2012, while housed at WSP, he contracted Valley Fever.  (Doc. 24, ¶¶ 82-86.)  He was placed on an anti-fungal medication, fluconazole, but was not advised of the risk of dissemination of the fungus to different parts of his body, or potential signs thereof.  (*Id.*, at ¶ 86.)

On April 1, 2013 he began to experience severe, debilitating pain in the posterior aspect of

his left upper extremity and the next day he submitted a medical slip to receive a refill of fluconazole, which was approved by Defendant Songer on April 3, 2013.  (*Id.*, at ¶ 91.)  That same day, Plaintiff submitted a request to see a doctor and was triaged by Defendant Fernando the next day.  (*Id.*, at ¶ 92.)  Defendant Fernando did not allow Plaintiff to see a doctor, but consulted with Defendant Songer, who prescribed Naproxen for Plaintiff's pain.  (*Id.*)

Early on April 9, 2013, Plaintiff, who now had a visible abnormality, submitted another request to see a doctor, describing in detail his continuing and worsening pain.  (*Id.*, at ¶¶ 93, 94.)  Defendant Sagasta recommended that Plaintiff see a doctor, but on consult, Defendant Songer refused to examine Plaintiff, ordering x-rays instead which were negative.  (*Id.*)  After this, because of the unbearable pain, Plaintiff began attempting to be seen unannounced, but was repeatedly denied treatment by Defendants Fernando, Sagasta, Songer, and Does 3-10.  (*Id.*, at ¶ 95.)  Plaintiff became hunched over, unable to work and eat, developing malnutrition and losing weight.  (*Id.*, at ¶ 96.)

On April 11, 2013, Plaintiff again submitted a detailed, pleading request to see a doctor.  (*Id.*, at ¶ 96.)  Plaintiff was again triaged by Defendant Fernando who failed to note any abnormalities in Plaintiff's left shoulder and referred Plaintiff for a "routine" follow up appointment which should have been a week later (on April 19), but was actually scheduled for April 23.  (*Id.*, at ¶ 97.)

On April 15, 2013, Plaintiff again submitted a detailed, pleading request to see a doctor.  (*Id.*, at ¶ 98.)  Defendant Fernando spoke with Plaintiff the next day and told him he was scheduled to see a doctor on April 18, 2013, but that she would triage him, which Plaintiff declined -- waiting to see the doctor on the 18th instead.  (*Id.*, at ¶ 99.)  On the 18th, Plaintiff was scheduled for a "Telemed" consultation which he refused so as to be able to see a doctor in person.  (*Id.*, at ¶ 100.)  That same day, Plaintiff submitted another form to see a doctor and Defendant Fernando triaged him the next day noting his weight at 228 lbs and writing "no abnormalities" and referred Plaintiff to see a doctor telling Plaintiff he would see the clinic doctor on April 23rd.  (*Id.*, at ¶ 101.)

On April 23, Defendant Songer finally examined Plaintiff, realized that Plaintiff was in

need of immediate medical attention, ordered lab work and x-rays, noted Plaintiff's left scapula area was "bulging out" and very tender, and that his weight was down to 206 lbs.  (*Id.*, at ¶ 102.)

The results of the blood work showed significant infection.  (*Id.*)  Defendant Songer ordered Plaintiff transferred to the TTA until he could be transported to a hospital -- which was accomplished by ambulance later that evening.  (*Id.*)  At the hospital, the abscess was drained and prepared with "open packing" to allow it to heal from the inside out.  (*Id.*, at ¶ 103.)  In the hospital, it was discovered that Plaintiff had both cocci-fungus and Staph in the abscess and that there was damage to the bone of Plaintiff's left upper arm.  (*Id.*, at ¶ 104.)  Post-discharge orders included "intensive" physical therapy and reconstructive surgery.  (*Id.*, at ¶¶ 105, 106.)

Plaintiff received 8 PT visits while in the "CTC at WSP," but did not receive PT on a regular basis thereafter.  (*Id.*, at ¶ 107.)  During that time, Plaintiff was dependent on nursing staff at WSP to change his bandages, but encountered various difficulties.  (*Id.*, at ¶¶ 108, 109.)  On August 2, 2013, Plaintiff submitted a form complaining that his surgical dressing was not being changed daily.  (*Id.*)  Over two weeks later, on August 15, Defendant Jesse confronted Plaintiff about that form, used vulgar language, and called Plaintiff a complainer -- which caused Plaintiff extreme mental anguish.  (*Id.*, at ¶ 110.)  A couple hours later, Plaintiff was escorted to have his surgical dressing changed and had a brief discussion with Defendant Jesse about the form that he submitted to get his dressings regularly changed.  (*Id.*, at ¶ 111.)  At this time, Defendant Butler became involved and became hostile toward Plaintiff despite Plaintiff's attempts to explain that he was trying to comply with the requirements to submit forms for treatment.  (*Id.*)  Defendant Butler threatened to send Plaintiff back to custody without getting his bandage changed, the two exchanged words culminating with Defendant Butler grabbing Plaintiff's left wrist and twisting Plaintiff's left arm behind Plaintiff's back despite knowing that Plaintiff had problems with his left arm.  (*Id.*)

On April 3, 2014, Plaintiff underwent surgery to release his left shoulder which had become frozen, but this was not the reconstructive surgery that was recommended post-op.  (*Id.*, at ¶ 114.)   Plaintiff subsequently filed various forms attempting to obtain further medical care for his left arm which were variously denied by Defendants Fernando, Sagasta, Songer, Youssef,

Marshall, Bradford, Jesse, and Does 3-10.  (*Id.*, at ¶¶ 116-122.)

**B.  Plaintiff's First Claim -- Against Defendants Beard, Katavich, Kelso, Tharratt, Youssef, Marshall, Fernando, Sagusta, Songer, Bradford, Jesse, Butler, and Does 3-10**

**1.  Deliberate Indifference to Serious Medical Needs**

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994).  For screening purposes, Plaintiff's infection which turned into a massive abscess requiring surgical removal is accepted as a serious medical need.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.*

(quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing:  (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotation marks omitted).  Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary.").

Plaintiff's allegations state a cognizable claim for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment against Defendants Fernando, Sagusta, Songer, Jesse, Butler, and Does 3-10.  Plaintiff does not state any cognizable claim against any of the other named Defendants as they are not linked to his allegations.

**C.  Plaintiff's Second Claim -- Against Defendants Beard, Katavich, Youseff, Marshall, Songer, Bradford, and Does 3-10**

**1.  Supervisory Liability**

Plaintiff states "Supervisory Liability" in the title of his second claim.  (Doc. 1, at ¶41.) Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  *See Iqbal*, 556 U.S. at 677; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Iqbal*, 556 U.S. at 677.  Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct.  *Id.*

To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either:

1   personally participated in the alleged deprivation of constitutional rights; knew of the violations

2   and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the

3   policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

4   violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted);

5   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

6        "'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the

7   elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to

8   dismiss [and thus also for screening purposes], are not entitled to an assumption of truth."  *Moss*,

9   572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)).  "Such

10  allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather

11  because they do nothing more than state a legal conclusion – even if that conclusion is cast in the

12  form of a factual allegation."  *Id.*

13       Plaintiff makes no specific factual allegations of wrongful conduct by Defendants Beard,

14  Katavich, Youssef, Marshall, Bradford, and Does 3-10; rather, he generally states formulaic

15  recitations that are insufficient to amount to facially plausible allegations, harkening to theories of

16  *respondeat superior* which he <u>again</u> instructed are not actionable un § 1983.  Thus, Plaintiff's

17  allegation that Defendants Beard, Katavich, Youssef, Marshall, Bradford, and Does 3-10 are

18  liable for the actions of subordinates under their supervision does not state a cognizable claim.

19  Further, while Plaintiff states allegations against Defendant Songer, they are properly addressed

20  under his first cause of action under the Eighth Amendment for Defendant Songer's personal

21  involvement on Plaintiff's care and treatment rather than under the guise of respondeat superior

22  liability.

23                    **2.  Failure to Train, Advise, Supervise, and Guide**

24       A supervisor's failure to train subordinates can give rise to individual liability under

25  Section 1983 where the supervisor's failure amounts to deliberate indifference to the rights of

26  persons with whom the employees are likely to come into contact.  *See Canell v. Lightner*, 143

27  F.3d 1210, 1213-14 (9th Cir.1998) (to prevail on claim that supervisor violated plaintiff's

28  constitutional rights by failing properly to train subordinate, plaintiff must show that failure

9

1   amounted to deliberate indifference).  For liability to attach in this circumstance, Plaintiff must

2   show that the training of the subordinate was inadequate and that the inadequacy of the training

3   was the result of a deliberate or conscious choice on the part of Defendants Beard, Katavich,

4   Youssef, Marshall, Bradford, Songer, and Does 3-10.  *Id*. at 1214.  Also, the identified training

5   deficiency must be causally connected to the ultimate injury.  *City of Canton v. Harris*, 489 U.S.

6   378, 391 (1989).  In other words, to impose liability, Plaintiff is required to show that the

7   inadequate training actually caused the constitutional violation and that the violation would have

8   been avoided had the employees been properly trained.  *Id*. at 389-91; *Lee v. City of Los Angeles*,

9   250 F.3d 668, 681 (9th Cir.2001) (citations and internal quotations omitted).

10         Plaintiff's allegations do not show a deficient training program "intended to apply over

11   time to multiple employees;" continued adherence by policymaking defendants "to an approach

12   that they know or should know has failed to prevent tortious conduct by employees;" "the

13   existence of a pattern of tortious conduct by inadequately trained employees [which tends] to

14   show that the lack of proper training, rather than a one-time negligent administration of the

15   program or factors peculiar to the officer involved in a particular incident, is the 'moving force'

16   behind the plaintiff's injury;" nor "a violation of federal rights [as] a highly predictable

17   consequence of a failure to equip law enforcement officers with specific tools to handle recurring

18   situations." *Board of County Commissioners v. Brown*, 520 U.S. 397, 407-09 (1997).

19         Further, claims for inadequate training have been found cognizable when stated against

20   municipalities.  *See Id.*; *Long v. County of Los Angeles,* 442 F.3d 1178, 1186 (9th Cir. 2006) *ref.*

21   *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  Plaintiff does not name a municipality

22   as a defendant in this action and, indeed, cannot name the CDCR given Eleventh Amendment

23   immunity.

24         Finally, here again, Plaintiff makes no specific factual allegations of conduct by

25   Defendants Beard, Katavich, Youssef, Marshall, Bradford, Songer, and Does 3-10 that amounted

26   to a failure to train, assign, supervise, and/or guide CDCR employees.  Plaintiff's allegations in

27   this regard are still nothing more than formulaic recitations that do not amount to facially

28   plausible allegations.  Thus, Plaintiff's allegation that Defendants Beard, Katavich, Youssef,

10

1   Marshall, Bradford, and Does 3-10 failed to properly train, assign, supervise, and/or guide

2   Defendants Fernando, Sagata, Songer, Jesse, and Butler are not cognizable.

3          **D.  Plaintiff's Third Claim -- Against All Defendants**

4                  **1.  California Law**

5          To establish medical negligence (malpractice), a plaintiff must state (and subsequently

6   prove) all of the following: (1) that the defendant was negligent; (2) that the plaintiff was harmed;

7   and (3) that the defendant's negligence was a substantial factor in causing the plaintiff's harm.

8   *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996); *Ann M. v. Pacific Plaza Shopping*

9   *Center*, 6 Cal.4th 666, 673 (1993); Restatement Second of Torts, section 328A; and Judicial

10  Council Of California Civil Jury Instruction 400, Summer 2008 Supplement Instruction.

11         Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

12  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

13  action within such original jurisdiction that they form part of the same case or controversy under

14  Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under §

15  1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

16  discretionary."  *Acri v. Varian Assoc., Inc*., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court

17  may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the

18  district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

19  1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before

20  trial, . . . the state claims should be dismissed as well."  *United Mine Workers of America v.*

21  *Gibbs*, 383 U.S. 715, 726 (1966).

22         This Court will retain jurisdiction over Plaintiff's claims under California law only as long

23  as Plaintiff's federal claims are viable.

24         **E.**        **Kelso is entitled to the protections of quasi-judicial immunity**

25         As noted in Plaintiff's amended complaint, Kelso is the Receiver for CDCR's health care

26  system. *See Plata v. Schwarzenegger*, et al., C01–1351–TEH (N.D.Cal. Jan. 23, 2008). Upon his

27  appointment in 2008, "[t]he Receiver and his staff [were granted] the status of officers and agents

28  of [the Plata Court], and as such [were] vested with the same immunities as vest with [the Plata]

Court." *Id.* Those judicial immunities extend to immunity from suit. *See Pierson v. Ray*, 286 U.S. 547, 553–54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ...."). *See also Coleman v. Schwarzenegger*, 2007 WL 4276554 (E.D.Cal. Nov.29, 2007) (holding that a receiver who was "imbued with the power and authority to act in the name of the Court as the Court's officer" and who "acts as a 'surrogate ' of the court" had quasi judicial immunity). "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). There are two primary exceptions to the absolute judicial immunity: first, where the judge's action is "not taken in the judge's judicial capacity"; and second, where the judge's action, "though judicial in nature, is taken in the complete absence of all jurisdiction." *See id.* at 11–12.

Here, Plaintiff brings suit against Kelso, as "the federally appointed Receiver empowered with the duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." (Doc. 24 at 9)  Seemingly, Plaintiff claims that Kelso has acted in some undescribed manner which denied him proper medical attention for his Valley Fever. Plaintiff, thus, asserts that Kelso failed to act properly in his role as Receiver. There is no allegation that Kelso acted "in the complete absence of all jurisdiction." Based thereon, the Court finds that Kelso is entitled to quasi-judicial immunity and suit may not be maintained against him.[2]

## II.   CONCLUSION

For the reasons set forth above, Plaintiff is given the option to either proceed on the claims found cognizable in this order, or **one last opportunity** to file an amended complaint.  If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than 21 days from the date of service of this order.

---

[2] To the extent Plaintiff attempts to amend his complaint to allege that Kelso was aware of plaintiff's medical needs and failed to act upon that knowledge, the Court finds that those allegations would similarly entitle Kelso to absolute quasi-judicial immunity because plaintiff would again be alleging that Kelso failed to act within his capacity as the Receiver of CDCR's health care system.

Case 1:14-cv-00405-DAD-JLT   Document 29   Filed 10/15/14   Page 13 of 14


Plaintiff must demonstrate in any second amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980).  The second amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's second amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading,"  Local Rule 220.

The Court provides Plaintiff with **one final** opportunity to amend to cure the deficiencies identified by the Court in this order.  *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1.    Within 21 days from the date of service of this order, Plaintiff must either:

    a.    File a second amended complaint curing the deficiencies identified by the Court in this order, or

    b.    Notify the Court in writing that he does not wish to file a second amended complaint and wishes to proceed only on the claims identified by the Court

13

as viable/cognizable in this order;

2.      The summonses issued on September 18, 2014 (Docs. 26, 27, 28) are

**WITHDRAWN**.

**Plaintiff's failure to comply with this order, may result in an order dismissing the actions**

**for failure to obey a court order.**

IT IS SO ORDERED.

Dated:   **October 15, 2014**                       **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE