# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS MARTINEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BEARD, et al.,<br><br>　　　　Defendants. | Case No.  1:14-cv-00405-DAD-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS THAT MOTIONS FOR SUMMARY JUDGMENT FOR PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT BY DEFENDANTS DR. SONGER, BRADFORD, FERNANDO, AND SAGASTA AS TO PLAINTIFF'S CLAIMS UNDER CALIFORNIA LAW AGAINST DEFENDANT BUTLER BE GRANTED**<br><br>**(Docs. 70, 71)**<br><br>**14 DAY DEADLINE** |

Defendants contend Plaintiff failed to exhaust the available administrative remedies before filing this lawsuit in violation of 42 U.S.C. § 1997e(a) and that they are entitled to summary judgement on the merits of Plaintiff's claims under the Eighth Amendment. (Docs. 70, 71.) The Court finds (1) that Defendants Dr. Songer, Bradford, Fernando, and Sagasta are entitled to summary judgment since Plaintiff failed to exhaust available administrative remedies; and (2) that Defendant Butler is entitled to summary judgment on Plaintiff's claims under state law for failure to comply with the California Tort Claims Act.

///

///

# FINDINGS

**A. Legal Standards**

### 1. Summary Judgment Standard

Any party may move for summary judgment, which the Court shall grant, if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Failure to exhaust available administrative remedies is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910 (2007); *Albino*, 747 F.3d at 1166. The defense must produce evidence proving the failure to exhaust and summary judgment under Rule 56 is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

### 2. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d

1198, 1199-1201 (9th Cir. 2002). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes v. Smith,* --- F.3d ---, 2016 WL 142601, *2 (9th Cir. Jan. 12, 2016). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532; 122 S.Ct. 983 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

"Under § 1997e(a), the exhaustion requirement hinges on the "availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001). However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Williams*, at 1166. The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 3. Summary of CDCR's Inmate Appeals Process

The California Department of Corrections and Rehabilitation has a generally available

3

administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners welfare, Cal. Code Regs., tit. 15, § 3084, *et seq*. Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, an inmate initiates the grievance process by submitting a CDCR Form 602, colloquially called an inmate appeal ("IA"), describing "the problem and action requested." Cal. Code Regs., tit. 15, § 3084.2(a). An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or related set of issues, per IA in the space provided on the form and one form attachment in which he/she shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2),(4). All involved staff members are to be listed along with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents are to be submitted with the IA; if they are not available, copies may be submitted with an explanation why the originals are not available, but are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit his/her IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level, and likewise thereafter to the third-level. Tit. 15 § 3084.2, .7. First and second-level appeals shall be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the United States mail service. Tit. 15 § 3084.2(d).

**B. Motions on Exhaustion per 42 U.S.C. § 1997e(a)**[1]

Defendants assert that Plaintiff did not exhaust available administrative remedies on his claims in this action before he filed suit. (Docs. 70, 71.) The Court must determine if Plaintiff filed any IAs concerning the allegations he is proceeding on in this action; if so, whether Plaintiff

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper-right corners via the CM/ECF electronic court docketing system.

4

complied with CDCR's process; and if Plaintiff did not comply with CDCR's process, whether the process had been rendered unavailable to him. *Ross* 136 S. Ct. at 1859; *Sapp*, 623 F.3d at 823.

Plaintiff is proceeding in this action on claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, while housed in Wasco State Prison in early April 2013, Plaintiff allegedly began suffering intense left shoulder pain which was so severe that he asked to be sent to a hospital. (Doc. 72, Plntf. Opp., p. 11.) Despite his repeated complaints and requests, Plaintiff claims nursing and medical staff deliberately and recklessly rebuffed Plaintiff's requests which resulted in excruciating and debilitating pain from a staph infected abscess which was not adequately addressed, treated, or assessed for nearly three weeks. (*Id.*) When Plaintiff was evaluated in an outside hospital on April 23, 2013, doctors found a large complex abscess in his left scapular area that went through the muscles to the shoulder joint. (*Id.*) The injury to Plaintiff's deltoid muscle resulted in limited range of motion and significant loss of function in his left arm. (*Id.*, p. 12.)

### 1. Defendants Motions[2]

Defendants' motions on exhaustion are addressed in tandem as they raise the same issues and evidence and Plaintiff's oppositions to both are virtually identical[3]. Dr. Songer's evidence shows that during 2013 and 2014, Plaintiff submitted five health care appeals to the ICAB for third level review:[4] (a) log number WSP SC 14000332; (b) log number WSP HC 13044700; (c) log number WSP HC 14045865; (d) log number WSP HC 14046696; and (e) log number WSP HC 14047090. (Doc. 70-2, SSUF ¶60.)

The evidence submitted by Defendants shows that Plaintiff never submitted a 602 alleging that Dr. Songer, D. Bradford, P. Fernando, or B. Sagasta failed to properly examine or treat complaints of shoulder pain or exhibited deliberate indifference concerning complaints of

---

[2] Defendants acknowledge that Plaintiff exhausted administrative remedies on his claim against Defendant Butler arising out of the alleged incident of August 15, 2013, and do not assert the failure to exhaust defense to that claim. (Doc. 71-1, MSJ, p. 19, fn. 1.)

[3] *Compare* Doc. 72, pp 45-55 with Doc. 73, pp. 23-33.

[4] The Court rejects Defendants apparent assumption that a Director's Level response is necessary to satisfy the exhaustion requirement and the mere absence of a Director's Level response entitles him to dismissal. *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010); *Brown v. Valoff*, 422 F.3d 926, 935-36 (9th Cir. 2005) ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available.").

shoulder pain in April 2013, or that D. Bradford promulgated or implemented a constitutionally deficient policy. (Doc. 71-1, p. 19, citing DUF 4.) Prior to the incidents alleged in this action, Plaintiff had been provided with copies of California Code of Regulations title 15 on August 23, 2004, January 6, 2005, May 21, 2007, March 10, 2008, January 12, 2009, and February 7, 2011. (*Id.*, citing DUF 13; 70-2, SSUF ¶¶56, 61.) Plaintiff also was provided with a copy of California Code of Regulations title 15 and an Orientation Packet, describing the process for submitting inmate appeals, including appeals concerning medical issues, when he arrived at Wasco on July 11, 2012.[5] (*Id.*, citing DUF 14, 15, 16, 17, 18, and 19; Doc. 70-2, SSUF ¶56.) Finally, Plaintiff submitted two separate 602 forms pertaining to visitor approval and family visiting after arriving at Wasco on July 11, 2012, but before encountering the Defendants in April 2013. (*Id.*, citing DUF 20, 21; Doc. 70-2, SSUF ¶¶62-64.)

### a. IA #14000332

In IA #14000332, which was received on September 10, 2014, Plaintiff alleged that he was verbally harassed by an angry Dr. Songer during a June 27, 2014 medical appointment. (Doc. 70-2, SSUF ¶69.) Plaintiff requested that Dr. Songer be reprimanded, that his shoulder be fixed, and that he receive pain management for his shoulder. (*Id*.) This IA was processed as a staff complaint and denied at the third level of review on December 30, 2014. (*Id*., SSUF ¶70.) Plaintiff was specifically advised that his health care concerns would not be addressed and that he would need to submit an additional health care appeal if he wanted those issues addressed. (*Id*.)

Defendant Dr. Songer correctly contends that this IA does not relate to the allegations against Dr. Songer in the instant litigation; rather it involves allegations regarding conduct that occurred in June 2014, *after* Plaintiff filed the instant litigation, (Doc. 1, Compl.); it did not address any health care concerns Plaintiff might have had; and it was filed over a year after the April 2013 events that are at issue in this action. (Doc. 70-1, MSJ, pp. 19-20.)

### b. IA #13044700

IA #13044700 was received on July 31, 2013. In it, Plaintiff requested to be taken to

---

[5] Though Defendants' points and authorities indicates that Plaintiff arrived at WSP on "July 11, 2013" the year is a typo as the supporting evidence shows that Plaintiff arrived at Wasco on July 11, 2012.

physical therapy for his arm and shoulder as ordered by physicians and specialists he had previously seen. (Doc, 70-2, SSUF ¶72.) The only mention of Defendant Dr. Songer in this IA is that "Dr. Songer called A-yard associate worker who in turn was to call Medical Cpt. Phillips about me being taken." (*Id*., SSUF ¶73.) Plaintiff did not complain of any action, or inaction by Defendant Dr. Songer in this IA.

IA #13044700 was denied at the third level of review on January 27, 2014. (*Id*., SSUF ¶74.) It is unrelated to Plaintiff's allegations against Defendant Dr. Songer in this action and was untimely under Title 15, § 3084.8(b) for the events at issue in this action which allegedly occurred in April of 2013.

### c. IA #14045865

IA #14045865 was received on January 10, 2014. In it, Plaintiff requested reconstructive surgery for his left shoulder. (Doc. 70-2, SSUF ¶76; Doc. 71-1, p. 20, citing DUF 5.) This appeal was not timely as to the medical evaluations which occurred in April 2013, since it was submitted more than 30 days after these events as required by California Code of Regulations title 15, section 3084.8(b). (Doc. 71-1, p. 20, citing DUF 5.) This appeal does not mention Fernando, Sagasta, Bradford, or Dr. Songer, as required by California Code of Regulations title 15, section 3084.2(a). (*Id.*, citing DUF 6.) In fact Defendant Dr. Songer interviewed Plaintiff regarding IA #14045865. (Doc. 70-2, SSUF ¶79.) Plaintiff inquired in a later appeal filing about the month delay in the treatment of his infection, but was specifically advised this issue would not be considered as Title 15 prohibits adding new issues mid-appeal. (*Id.*, SSUF ¶77; *see also* Doc. 71-1, p. 20.) This IA was denied at third level of review on August 13, 2014. (*Id*., SSUF ¶80.) IA #14045865 does not pertain to the allegations against Defendants Dr. Songer, Fernando, Sagasta, and Bradford in the instant action and was untimely under Title 15, § 3084.8(b) for the events at issue in this action which allegedly occurred in April of 2013.

### d. IA #14046696 & IA #14047090

IA #14046696 was received on May 21, 2014, and in it Plaintiff sought monetary compensation for his contraction of Valley Fever. (Doc. 70-2, SSUF ¶81.) This IA was initially screened out at the first level of review on the grounds that it was not submitted timely. (*Id*.,

7

SSUF ¶82.) Subsequently, Plaintiff submitted a separate health care appeal, IA #4047090, challenging the screen out of IA #14046696. (*Id*., SSUF ¶83.) On October 10, 2014, IA #14047090 was granted and Plaintiff was authorized to re-submit IA #14046696. (*Id*.) Plaintiff resubmitted IA #14046696 and it was ultimately denied at the third level of review on February 26, 2015. (*Id*., SSUF ¶84.)

IA #14046696 deals with Plaintiff's contraction of Valley Fever, which occurred in 2012 and does not mention Defendant Dr. Songer or any medical issue based on events in April 2013. Further, it was untimely under Title 15, § 3084.8(b) for the events at issue in this action which allegedly occurred in April of 2013. Though IA #14047090 was granted, its only purpose was to challenge the initial screen-out of IA #14046696 such that it does not correlate to any of the events at issue in this action.

The Court finds that, Defendants Dr. Songer, Fernando, Sagasta, and Bradford have met the initial burden of informing the Court of the basis for the motion and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### e. Plaintiff's Opposition

Plaintiff argues that an IA he submitted on August 14, 2013 (IA #13000246) sufficed for exhaustion purposes regarding the medical care he received in April of 2013. (Doc. 72, pp. 46-47; Doc. 73, pp. 24-33.) This is the only IA Plaintiff relies on for exhaustion purposes. (*See* Docs. 72, 73.) Plaintiff shows that IA #13000246 was entered into HCARTS system on or about September 1, 2013, and states:

> Claims that since 4/4/13 he has been putting in slips requesting help for his arm as it was painful and hard to move. He claims he also went the [sic] clinic about his arm asking to be seen by a doctor or to be sent to the emergency room for treatment. He was told to leave or put in another requests [sic]. After 3 weeks he was finally seen by doctor and was sent to the emergency room. He had a staph infection eating away at his muscle/tissue inside his arm as he waited to be seen. He wants accountability for this. He has no use of his left arm and is in need of intensive physical [sic] therapy.

(Doc. 72-37, p. 2; Doc. 73-36, p. 2.) Plaintiff asserts that there is no documentation that this IA was formally responded to by Wasco officials. (Doc. 72, p. 48, citing Doc. 72-1, SDMF ¶¶ 175-177; Doc. 73, p. 26, citing Doc. 73-3, SDMF ¶¶ 181-183.) Plaintiff asserts that this lack of documentation equates to improper screening and/or loss of IA #1300246, is "prima facie evidence that inmates lack access to a remedy through the appeals process, and a failure to address the issues raised in an appeal, or provide substantive review at each level will be taken to mean that the process is not meaningful." (Doc. 72, pp. 48-49, citing Doc. 72-1, SDMF ¶ 146; Doc. 73, pp. 26-27, citing Doc. 73-3, SDMF ¶152.) Notably, Plaintiff fails to cite any legal authority to support any such "prima facie" finding on the facts here and the Court finds none.[6]

It is true that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). However, this legal principle was established to "ensure that prions officials will consider and resolve" properly submitted inmate grievances. *Id.* Further, "[t]o fall within this this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at pp. 823-24. A basic premise of this exception is that the inmate submitted a grievance that complied

---

[6] Plaintiff presents approximately seven pages of arguments attempting to excuse his failure to submit a timely IA after the events that allegedly occurred in April of 2013. (Doc. 73, pp. 24-30.) However, he fails to cite *any* legal authority to support *any* of his arguments. (*Id.*) Conversely, the immediately following section of Plaintiff's opposition is nothing but recitation of legal holdings, without any correlation to Plaintiff's exhaustion efforts that are at issue in this motion. (Doc. 73, pp. 30-32.) Plaintiff cites *Sapp*, 623 F.3d at 824 and *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) for the principle that a grievance suffices if a prison's grievance procedure does not specify the requisite level of detail for inmate appeals and the appeal alerts the prison to the general nature of the wrong for which redress is sought. (Doc. 73, pp. 31-32.) This principle is clearly not applicable since, as of 2011, section 3084.2(a) requires an inmate to "state all facts known and available" and to list all staff members involved in the incident as well as describe their involvement.

1  with the requirements of the prison's inmate grievance process.  The Court is unable to find any
2  court that allows an improper screening exception to cure an untimely inmate grievance, and
3  Plaintiff points to none.

4  There is also an exception to a procedurally defective inmate grievance if prison officials
5  decide to overlook the errors of the grievance and decided it on the merits, but that did not occur
6  here.  *See Reyes v. Smith,* --- F.3d ---, 2016 WL 142601, (9th Cir. Jan. 12, 2016) (finding an
7  inmate need not name every Defendant in an IA even where procedural rule required inmates to
8  "list all staff member(s) involved" in a grievance and "describe their involvement in the issue"
9  (Cal. Code Regs. Tit. 15 § 3084.2(a)) where prison officials decided the potentially flawed
10 grievance on the merits).

11 Plaintiff's evidence also shows that he filed other IAs attempting to ascertain the status of
12 IA #13000246, which proved fruitless.  (Doc. 73, pp. 49-50; Doc. 73, pp. 27-28.)  However,
13 Plaintiff fails to submit evidence, or legal authority that his diligence attempting to obtain a
14 response to IA #13000246 overcomes its initial untimeliness.  (*Id.*)

15 Plaintiff's evidence shows that though he received responses to other IAs indicating they
16 were cancelled for untimeliness, this did not occur with IA #13000246.  (Doc. 72, pp. 50-51; Doc.
17 73, pp. 28-29.)  Plaintiff states in the header for this section that "Defendants cannot argue for
18 dismissal of Mr. Martinez' (sic) 602-HC appeal, which the Appeals Coordinator did not formally
19 respond to, by asserting it was untimely."  (Doc. 72, p. 50; Doc. 73, p. 28.)  However, Plaintiff
20 again cites no legal authority for this proposition.

21 Plaintiff also argues that the lack of formal response to IA #13000246 in
22 September/October of 2013 deprived him of "meaningful opportunity to challenge" a finding that
23 it was untimely and that it is "self-serving" for Defendants to seek dismissal for tardiness.  (Doc.
24 72, pp. 51-52; Doc. 73, pp. 29-30.)  In this section of his opposition, Plaintiff asserts that he "was
25 hospitalized for nearly three months continuously following his transfer to San Joaquin
26 Community Hospital on April 23, 2013 by ambulance" which in and of itself "may have been
27 good cause for a delay in filing a 602-HC appeal concerning the events of April 2013."  (Doc. 72,
28 pp. 51-52 citing Ex. 1, Juan Martinez Depo., 108:5-18; Doc. 73, pp. 29-30 citing Ex. 1, Juan

1  Martinez Depo., 108:5-18.)  A true three month hospitalization might render an inmate appeals
2  process unavailable to an inmate.

3  However, Plaintiff's deposition testimony does not support a finding that he was actually
4  "hospitalized for nearly three months continuously following his transfer to San Joaquin
5  Community Hospital."  Rather, in his deposition, Plaintiff stated that he was in San Joaquin
6  Community Hospital for one week, after which he was transferred to Kern Valley Prison's
7  infirmary for another week and thereafter he was transferred to Wasco Prison's infirmary where
8  he was housed for two months.[7]  (Doc. 72-2, p. 17, Martinez Depo. 108:15-18; Doc. 73-2, p. 16,
9  Martinez Depo. 108:15-18.) However, Plaintiff fails to show that he was prohibited from
10  accessing the inmate appeals process while at either Kern Valley or Wasco following his
11  discharge from the outside hospital; nor does he present any evidence that his medical condition
12  while at either of those facilities prevented him from timely utilizing the inmate appeals process
13  for the events that allegedly occurred in April of 2013.

14  Plaintiff acknowledges that he submitted IA #13000246 "on or about August 14, 2013."
15  (Doc. 72-1, p. 44, SDMF ¶169; Doc. 72-4, Crouch Decl., ¶41; Doc. 73-1, p. 15, SDMF ¶51; Doc.
16  73-3, Crouch Decl., ¶ 39.)  Plaintiff provides no evidence that he submitted IA #13000246 or any
17  other IA related to his allegations against Defendant Dr. Songer within 30 days of the events that
18  occurred in April of 2013.  Likewise, he provide no evidence upon which to find an excuse for
19  not having done so.

20  "Proper exhaustion demands compliance with an agency's deadlines and other critical
21  procedural rules because no adjudicative system can function effectively without imposing some
22  orderly structure on the course of its proceedings."  *Woodford v. Ngo* 548 U.S. 81, 91 (2006).
23  Plaintiff's scattershot arguments do not suffice to demonstrate that (1) he submitted a timely
24  appeal adequately grieving medical care for his shoulder in April of 2013, in compliance with the
25  applicable procedural rules, and (2) the process was rendered effectively unavailable with respect
26  to this appeal.  *Williams*, 775 F.3d at 1191-92.  (citing *Woodford* , 548 U.S. at 90-91 (explained in

---

[7] Plaintiff's mischaracterization of a week in the hospital, followed by a week at Kern Valley CTC, followed by two months at Wasco CTC as being "hospitalized for nearly three months continuously following his transfer to San Joaquin Community Hospital" verges on a blatant effort to mislead the Court.

1    *Williams* that *Woodford* held "that proper exhaustion requires compliance with agency's
2    deadlines and procedures")). An inmate appeals process is unavailable when: (1) it operates as a
3    simple dead end; (2) it is essentially unknowable, so that no ordinary prisoner can make sense of
4    what it demands; or (3) an inmate's pursuit of relief is thwarted through machination,
5    misrepresentation, or intimidation by prison administrators. *Ross v. Blake*, --- U.S. ---, 136 S.Ct.
6    1850, 1859 (2016).

7         First and foremost, Plaintiff does not submit any evidence to show that he submitted an IA
8    that complied with the applicable procedural rules on the events in this action. Plaintiff only
9    points to IA #13000246, which he acknowledges he did not submit until August 14, 2013 -- well
10   past the 30 calendar day deadline set by section 3084.8(b). IA #13000246 did not contain all
11   facts Plaintiff knew as required by section 3084.2(a)(1),(2),(4), nor did it identify and provide a
12   description of Defendants Dr. Songer, Fernando, Sagasta, and Bradford and their involvement in
13   the issue as required by section 3084.2(a)(3). IA #13000236 thus did not comply with the
14   applicable procedural rules.

15        Further, Plaintiff fails to show that the process was effectively rendered unavailable to
16   him in May of 2013. *Ross.*, 136 S.Ct. at 1859-60. To the contrary, Defendant's evidence shows
17   that Plaintiff had received copies of the orientation manual and a copy of the regulations for IAs
18   on a number of occasions prior to 2013, (Doc. 70-1, p. 23 citing SSUF ¶¶ 56, 61), that Plaintiff
19   admitted he was aware that IA forms existed and knew where to get them (*id.*, citing SSUF ¶62),
20   and filed two IAs prior to April of 2013 for unrelated issues (*id.*, citing SSUF ¶¶63-64, 72).

21        Plaintiff's assertion that he was exempted or excused from complying with the IA process
22   because he sought relief beyond that obtainable in the administrative process, namely money, is
23   flatly rejected. *See Booth v. Churner*, 532 U.S. 731 (2000).

24        Finally, Plaintiff submitted evidence that an IA he filed regarding treatment for his Valley
25   Fever was found not to be untimely (after initially being cancelled) because his medical condition
26   therein "was ongoing." (Doc. 72, pp. 50-51, citing SDMF ¶¶ 163-167; Doc. 73, pp. 29-30, citing
27   SDMF ¶¶ 169-173.) Though not specifically stated, Plaintiff may have intended to argue that
28   treatment for the underlying infection in his shoulder was ongoing such that IA #13000246

should be found to be timely for purposes of this action. However, Plaintiff admits that his IA on his Valley Fever condition was ultimately accepted as not untimely "because the medical problem he experienced with Valley Fever was ongoing, rather than occurring on a specific date, . . ." (Doc. 72, p. 51; Doc. 73, p. 29.) Plaintiff's claims against Defendants here are limited in time to April of 2013 for failing to provide timely diagnosis and treatment for the infection in his shoulder; this is not "ongoing." The medical treatment (or lack thereof) that upon which Plaintiff's claims are premised occurred and ended in April of 2013. Thus, IA #13000246 was untimely as to his claims in this action since Plaintiff did not submit it within 30 days -- i.e. before the end of May of 2013.[8]

Plaintiff failed to exhaust available administrative remedies on his claims against Defendants Dr. Songer, Fernando, Sagasta, and Bradford before he filed suit and their motions for summary judgment thereon should be **GRANTED**.[9]

**C. CTCA Compliance -- Plaintiff's August 15, 2013 Claim against Defendant Butler**

Under the California Tort Claims Act, set forth in California Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board, and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal.App.4th 1767, 1776 (1995). The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal.4th 1234,

---

[8] The sufficiency of treatment for Plaintiff's shoulder after April of 2013 is beyond the scope of Plaintiff's claims here.
[9] Since these Defendants are entitled to summary judgment for Plaintiff's failure to exhaust, their arguments as to the merits of Plaintiff's claim and for qualified immunity need not be addressed; Defendant Bradford's motion on the merits of Plaintiff's claim based on a failure to train and/or supervise subordinates also need not be addressed; and the motion as to Plaintiff's claim for punitive damages against Defendants Fernando, Sagasta, & Bradford, likewise, need not be addressed.

1244 (2004).  Thus, in the state courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action."  *Id*. at 1239 (fn.omitted).

Federal courts must require compliance with the CTCA for pendant state law claims that seek damages against state employees or entities.  *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir.1969); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477 (9th Cir.1995).  State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the applicable requirements.  *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 627 (9th Cir.1988); *Butler v. Los Angeles County*, 617 F.Supp.2d 994, 1001 (C.D.Cal.2008).

Defendant Butler asserts that Plaintiff did not submit a claim to the VCGCB Board regarding his claim against him.  (Doc. 71, p. 30.)  This is based on Plaintiff's statement conceding as much in his deposition.  (*Id.*, citing Doc. 71-2, DUF ¶77, citing Exh. C, Martinez Dep. 42:22-43:19.)  In opposition, Plaintiff submitted a copy of a claim form that he submitted to the VCGCB on August 18, 2013.  (Doc. 72, p. 57, citing Doc. 72-46, Exh. 3005, and Doc. 72-4, Crouch Decl., ¶59.)[10]

Plaintiff is proceeding against Defendant Butler based on the following allegations:

> At approximately 9:00 a.m. Plaintiff was escorted to the A-yard clinic to have his surgical dressing changed. Plaintiff had a brief discussion with defendant JESSE A. about the 602-HC. Custodial Officer BUTLER, who was working at the A-yard medical clinic, became hostile towards Plaintiff and challenged Plaintiff to submit another 602 form if he had "additional" complaints. Plaintiff tried to explain to BUTLER that Plaintiff was just trying to comply with the instructions he been given about submitting 602-HC forms if he had complaints about health care services, and was frustrated that he was then verbally harassed and retaliated against when he followed these instructions. In response, BUTLER threatened to

---

[10] This appears to be a typographical error as ¶59 of Crouch's Declaration (Doc. 72-4) addresses a declaration prepared by a hired expert witness -- "Dr. Leff." Paragraph 61 of that declaration indicates that a true and correct copy of Plaintiff's VCGCB claim is attached as "Exhibit 30005." (Doc. 72-4, p. 17.) It is noteworthy that the exhibits between both sets of Plaintiff's opposition documents begin marked with low numbers from "1" into the teens, but thereafter are inexplicably numbered in the 200's, 300's, 600's, 700's, 2000's, and 3000's. (*See* Docs. 72-2 - 72-46; Docs. 73-2 - 73-45.) Further, though Plaintiff referred to various exhibits in his memorandum of points and authorities, he repeatedly failed to identify the document that contained the noted exhibit, which forced the Court to repeatedly dig through the 1000+ pages of exhibits and declarations he filed attempting to locate and review a given exhibit. Finally, though Plaintiff referred to various exhibits, he repeatedly failed to direct the Court to specific pages of multiple paged exhibits.

> send Plaintiff back to custody without his dressing change. Plaintiff told BUTLER he needed his dressing changed and asked to be taken to the program office. BUTLER then grabbed Plaintiff's left arm by the wrist. Plaintiff told BUTLER his arm and shoulder had problems. BUTLER told Plaintiff he "didn't care" and violently twisted Plaintiff's left arm behind Plaintiff's back. BUTLER then sarcastically challenged Plaintiff to "write him (BUTLER) up" for his actions.

(Doc. 31, SAC, ¶57.)  These allegations were found to state a cognizable claim against Defendant Butler for deliberate indifference to his serious medical condition under the Eighth Amendment and for negligence under California law.  (Doc. 36, Cog. Claim O.)

On his VCGCB claim form, Plaintiff explained the circumstance that led to the damage or injury as:

> Claimant, and inmate at Wasco State Prison ("WSP"), notified medical personnel at WSP of excruciating pain in his left arm in late March of 2013.  Medical personnel did not provide prompt and necessary medical care to Claimant.  As a consequence of the delay in treatment, Claimant suffered severe injury, including paralysis, to his arm and back.

(Doc. 72-46, Exh. 3005, p. 3; Doc. 73-45, Exh. 3005, p. 3.)

Plaintiff relies on the doctrine of substantial compliance to assert that his VCGCB claim was sufficient since it gave "the state enough information to investigate his personal injury claim associated with his arm.  (Doc. 72, pp. 55-58.)

The California Supreme Court established two questions to be asked when assessing the sufficiency of a particular claim:  "Is there Some compliance with All of the statutory requirements; and, if so, is the compliance sufficient to constitute Substantial compliance?" *City of San Jose v. Superior Court,* 12 Cal.3d 447, 457 (1974) (alterations in the original).  This has become known as "the Substantial Compliance Test."  *Cnty of Los Angeles,* 159 Cal.App.4th at 360.

"A theory of recovery not included in the claim may not thereafter be maintained. However, while the circumstances described in a claim must substantially correspond with the causes of action pled, the claim need not conform to pleading standards. The primary function of the Government Tort Claims Act is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling

meritorious claims." *Shoemaker v. Myers*, 2 Cal.App.4th at 1426.

California cases addressing this issue assist in evaluating the sufficiency of Plaintiff's allegations in his VCGCB claim upon which he seeks to pursue his negligence claim under California law against Butler.   Differences in factual allegations between a government claim and a subsequent complaint, even mere nuances, are not allowed. *See Fall River Joint Unified Sch. Dist. v. Superior Court,* 206 Cal.App.3d at 434 (allegations regarding a door closing too forcefully and the plaintiff's head being caught and injured in the door frame in the government claim was insufficient for the plaintiff to be allowed to proceed on a claim of failure to supervise kids who were rough-housing and caused the plaintiff to fall into the door and jam in an amended complaint -- negligent maintenance to negligent supervision); *Donahue v. State of California,* 178 Cal.App.3d 795 (1986) (claim in complaint asserting DMV employee who conducted behind-the-wheel test with a minor failed to instruct, direct, and control the driver in the operation of the vehicle was dismissed where government claim alleged that DMV was negligent in permitting an uninsured driver to take the test -- negligent supervision to negligent permission); *Nelson v. State of California*, 139 Cal.App.3d 72 (1982) (government claim for medical malpractice which alleged a failure to diagnose and treat was found insufficient to support a civil complaint which sought damages for not seeking competent assistance -- negligent care & treatment to negligent referral); *Lopez v. Southern Cal. Permanente Medical Group,* 115 Cal.App.3d 673 (1981) (government claim alleged the State negligently issued a driver's license to a person with a known epileptic condition, when discovery revealed that State was unaware of the driver's epileptic condition, the plaintiff attempted to file an amended complaint alleging that the State was aware, prior to the subject action, that the driver had failed to comply with accident reporting and financial responsibility provisions of the California Vehicle Code, but that the State nevertheless neglected to suspend or revoke his driver's license, the plaintiff's motion to amend was denied and the State was dismissed -- knowledge of an unsafe medical condition to knowledge of  deficient conduct); *Shelton v. Superior Court,* 56 Cal.App.3d 66 (1976) (plaintiff not allowed to proceed on loss of consortium claim in lawsuit where factual allegations in government claim were for physical injuries); *Connelly v. State of California,* 3 Cal.App.3d 744 (1970) (government claim

alleged State officials negligently provided dock owner with inaccurate information as to the anticipated rise in the Sacramento river was insufficient for the plaintiff to proceed on a claim in suit for negligence in the operation of the dams -- negligent dissemination of information to negligent dam operation).

As Defendants correctly point out, compliance with the CTCA requires a Plaintiff to reference all claims against a governmental employee in a VCGCB claim. *Nelson v. State of California,* 139 Cal.App.3d 72, 79 (1982); *Lopez v. Southern Cal. Permanente Medical Group,* 115 Cal.App.3d 673, 676-77 (1981). A VCGCB claim does not suffice for compliance with the CTCA as to claims in a subsequent action, unless a parallel can be drawn between their factual allegations. *Id.* Plaintiff's explanation of circumstances in his VCGCB claim relate solely to a failure to provide prompt and necessary medical care. Plaintiff argues that his statement in the VCGCB claim that the government was responsible suffices because it stated that "CDCR . . . has permitted . . . mistreatment to continue with impunity." (Doc. 72, p. 57.) However, this parsing of the sentence is misleading. The entire sentence is; "The CDCR as well as the Warden and other medical personnel at WSP are liable for Claimant's harms and losses because, inter alia, they failed to timely treat Claimant and have permitted such acts [sic] mistreatment to continue with impunity." (Doc. 72-46, p. 3; Doc. 73-45, p. 3.) This statement does not denote any inappropriately forceful handling of Plaintiff by correction staff; rather it only implicates Plaintiff's dissatisfaction with medical staff and the timeliness of medical treatment received.

Nothing in Plaintiff's VCGCB claim even remotely suggests that Plaintiff's injuries were occasioned by any acts other than untimely medical care. Plaintiff's VCGCB if devoid of any information from which state officials should or could have inferred that Butler forcibly maneuvered Plaintiff's arm in a manner and under circumstances, that Butler knew was contraindicated by Plaintiff's medical condition which would inflict pain and perhaps further injury, to place the state on notice of Plaintiff's claim against Butler in this action.

Plaintiff's assertion that his compliance with the inmate grievance process at Wasco on his claims against Butler relieves him of compliance with the CTCA is misplaced. An inmate's obligation to exhaust available administrative remedies on a claim is independent of the

obligation to comply with the CTCA. *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (2013) (*citing Wright v. State of California, supra,* 122 Cal.App.4th at pp. 670–671; *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1155). Thus, Plaintiff did not comply with the CTCA and his claims under state law against Defendant Butler should be dismissed.

**RECOMMENDATION**

Based on the foregoing, the Court **RECOMMENDS** that Defendants' motions for summary judgment, filed on June 9, 2016 (Docs. 71, 72), be **GRANTED** as follows:

1. Defendants' motion for summary judgment based on Plaintiff's failure to exhaust available administrative remedies on his claims against Defendants Dr. Songer, Fernando, Sagasta, and Bradford before he filed suit should be **GRANTED**;

2. Defendants Dr. Songer, Fernando, Sagasta, and Bradford and all claims against them should be dismissed without prejudice;

3. Defendants' motion for summary judgment on Plaintiff's claim under California law against Defendant Butler for Plaintiff's failure to comply with the California Tort Claims Act should be **GRANTED**; and

4. Plaintiff's claim under California law against Defendant Butler should be dismissed without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __February 7, 2017__             _____/s/ Jennifer L. Thurston_____
                                         UNITED STATES MAGISTRATE JUDGE